## No. 9411.

THE COLORADO IRRIGATION CONSTRUCTION CO., ET AL. *v.* THE NILE IRRIGATION DISTRICT.

Decided Dec. 6, 1920.   Rehearing denied Jan. 10, 1921.

Action by irrigation district on contractor's bond.   Judgment for plaintiff.

*Affirmed.*

1. IRRIGATION DISTRICTS—*Contracts.*   Section 11, chap. 113, S. L. 1905, relative to the authorization and ratification of irrigation district contracts by electors of the district, applies to modifications of, as well as to original contracts, and a modification of an executed contract involving a consideration in excess of twenty-five thousand dollars, without such authority and ratification, renders the contract void.

2.      *Void Contract—Acceptance of Work Under.*   Acceptance of work by an irrigation district board under a void contract, is without effect.

3. BONDS—*Principal and Surety—Liability.*   Principal and surety are liable on a contractor's bond where the conditions are not met, nor the work contemplated by the contract performed according to its terms.

4. INTEREST—*On Amount Due Under Bond.*   A party is entitled to interest on the amount due under a bond, from the date of notice of default and demand of payment.

*Error to the District Court of Morgan County, Hon. Charles Cavender, Judge.*

Messrs. BARDWELL, HECOX, MCCOMB & STRONG, Mr. JOHN R. SMITH, Mr. PERRY D. ROSE, for plaintiffs in error.

Messrs. MELVILLE, MELVILLE & WALTON, Mr. WALTER S. COEN, Mr. H. L. SHATTUCK, for defendant in error.

Mr. DELPH E. CARPENTER, *amicus curiae.*

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

THE defendant in error brought suit against the plaintiffs in error on a bond, executed by the Construction Company as principal and the Surety Company as surety, conditioned upon the faithful performance of a contract between the Construction Company and the defendant in error for the construction of a district irrigation system.

On trial to the court plaintiff had judgment for $100,000, the penalty named in the bond, and the case is now here on error.

It appears from the record that in June, 1909, the parties entered into the contract in question, which was thereafter submitted to the electors of the district under the statute and approved by them. It provided for the construction, within twenty months after such approval, of a complete irrigation system, consisting of eight storage reservoirs, intakes and outlets, etc. It was to have a storage capacity of 35,000 acre feet.

Up to March 31, 1911, when the time allowed for the completion of the system expired, the only work which had been done was the making of borings, the preparation of maps, and some other preliminary work. In April, 1912, the district board, having theretofore made an ineffectual effort to induce the Construction Company to proceed with the work, agreed with said company to a modification of the contract. Such modification was made, the contract thus modified was assigned to one Lucas with the consent of the district board, and with the consent of the Surety Company, the latter agreeing to the continuance of its obligation. This modified contract provided for the construction of only three of the eight reservoirs, with a total capacity of about 27,000 acre feet. Thereafter, these three storage reservoirs were constructed, the district board accepted the work as complete, and paid the Construction Company the agreed consideration.

Some months thereafter, this action was begun to recover the penalty on the bond, on the ground that the Construction Company had defaulted on its contract.

Defendants in the action made several defenses which

need not be considered. Their principal ground of contention is that the district, by the acts of its board, waived the default in the completion of the work, and in making the modified contract, it, in effect, abrogated the old contract; and, further, that the work having been completed within the time named in the modified contract, and accepted by the district board, there was no default on the part of the obligors in the bond.

Whether or not the several steps taken by the district board, after March 31, 1911, to induce the Construction Company to comply with the terms of the contract, constituted a waiver of the default, and an extension of the time, need not be determined, because it is admitted that the work as specified in that contract was never performed. The defendants must, of necessity, depend upon performance under the new and widely different contract.

The gist of the question to be determined is, was the making of the changes in the contract within the power of the district board. Defendants rely upon a provision in the original contract by which it might be modified by the mutual consent of the parties. The trial court found that the modifications made involved an expenditure in excess of $25,000 and hence were within the provisions of Section 11, Chapter 113, Session Laws 1905, which defines the powers and prescribes the duties of the board. Said section reads, in part, as follows:

"But no contract involving a consideration exceeding ten thousand ($10,000) dollars, and not exceeding twenty-five thousand ($25,000) dollars shall be binding, unless such contract shall be authorized and ratified in writing by not less than one-third of the legal electors of said district according to the number of votes cast at the last district election; nor shall any contract in excess of twenty-five thousand ($25,000) dollars be binding until such contract shall have been authorized and ratified at an election, in manner as is provided for the issue of bonds."

The contention of plaintiffs in error is that the provision in the contract for its modification by the consent of both

parties authorized the district board to change the contract as it did.  They urge, that this modification provision, having been approved by the electors as a part of the contract, the board was authorized as agents of the electors, or as the executive officers of the district, to make the modification.  This is an extreme, and as it seems to us, an unreasonable view of the provision in question.  The statute above cited was, in effect, read into the original contract, and the modification provision must be construed in connection with this statutory provision.  If counsel's view is correct, a district board, having secured the approval of a contract containing such a provision, has thereby exempted itself from this statutory prohibition.

Clearly, it was not in the power of the district board, nor of the electors themselves, to abrogate this statute, which was intended, not merely for the protection of the electors who might vote, but for the protection of all of the proper owners in the district.  Such modification provisions are common in contracts, having been found necessary to their carrying out.  They contemplate only such slight changes as may be found necessary to the accomplishment of the result aimed at by the contract.

Here the new contract omitted from the plan, which had been approved at the election, five of the eight reservoirs, and changed the line of the main canal.

The storage capacity was decreased 20%, at least.  No one can say that there would have been a majority in favor of the contract had it not included all the proposed reservoirs and been substantially as it was when submitted for approval.  It must be presumed that the consent of the electors to the incumbrance of their lands was given because they considered the proposed system sufficient to irrigate the district to an extent that justified the imposition of the resulting burden.  *Non constat* that a smaller or otherwise different system would be regarded as sufficient to render it advisable to assume the original, or any other obligation.  The electors, being presumed to know the law, must be presumed to have known that the power to

modify-the contract was limited by the statute. If the board can modify contracts to any extent because of such provision for modification, or can accept contracts as complete, regardless of compliance with the terms thereof, the statute which requires the approval of contracts by electors is without force, a cause of unnecessary expense to the district, and an aid to designing and dishonest promoters, who, because of the statute, may induce property owners to consent to the burdening of their lands under the belief that the system upon which they vote will be, in all substantial matters, the system for which they will pay. The lawmakers certainly knew that directors of irrigation districts would be, for the most part, men without experience in large enterprises, subject to the blandishments of promoters and contractors; and so they inserted in the statute these limitations on the power of the board to make binding contracts.

Is it to be supposed that this careful provision to prevent the board's acting without regard to the wishes, or interests of the electors, is to apply only to the first contract proposed for the consideration of the electors? Is this protective provision *functus officio* when one contract has been ratified? Can the board, by securing the approval of a contract containing authority to modify it, render inoperative the statute as to all their subsequent dealings with the contractor? To ask these questions is to answer them. This court ought not, by its construction of a contract, to nullify a provision of the statute clearly intended to protect the landowners of irrigation districts, and without which they are at the mercy of incompetency and dishonesty.

If the contract under which the work was done, violated the statutes and was therefore void, no action of the board by way of an acceptance of the work can have any force. If such acceptance were conclusive the act of acceptance would abrogate the statute above mentioned.

Although there may be in the pleadings some confusion as to the theory of the plaintiff, the case as tried was within

the pleadings and the matters above discussed were fully presented to, and considered by the court.

There is no error in his finding that the conditions of the bond had not been met; that the work had never been performed according to the contract, whether it was the first or the modified contract, and that in either event the surety was liable. Under the authority of *Empire Co. v. Lindenmeier,* 54 Colo. 497, 131 Pac. 437, Ann. Cas. 1914C, 1189, the plaintiff was entitled to interest from the date of notice of default, and demand of payment.

The judgment will be amended to include interest, and as so modified, it is affirmed.

MR. JUSTICE BAILEY and MR. JUSTICE DENISON dissent.