No. 13,125.

CITY AND COUNTY OF DENVER *v.* MOORMAN,
ADMINISTRATRIX.
(33 P. [2d] 749)

Decided May 21, 1934.   Rehearing denied June 12, 1934.

Mr. JAMES D. PARRIOTT, Mr. FREDERICK P. CRANSTON,
Mr. KARL C. BRAUNS, for plaintiff in error.

Mr. WILLIAM E. HUTTON, Mr. BRUCE B. McCAY, for
defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the
court.

ACTION for value of architectural services rendered by defendant in error's deceased husband in the matter of the construction of certain public buildings by plaintiff in error. We shall refer to him as the architect and to plaintiff in error as the city. The plaintiff had judgment for $3,501.50, and on the theory it should have prevailed, the city assigns error.

It appears that by direction of the city's building inspector, the architect, licensed, prepared plans for three public structures, the West Side Court Building, the Tubercular Hospital, and the Cody Memorial; that the city availed itself of the architect's services, at least to a considerable extent, and paid $1,500 on account thereof, leaving a balance, based on what was said to be usual and customary fees, of $14,358. It does not appear that bids for the work the architect performed were asked or given in accordance with the provisions of section 28 of the City Charter, Municipal Code, 1927, or at all, nor is it claimed that his employment was pursuant to such provisions; hence, the city argues, recovery is precluded. The plaintiff counters that the services, being professional in character, do not come within the charter provision, and in any event, the record considered, he is entitled to the value of his services. In its solution the trial court said: "There is no question that these services were not authorized by law; it is an ultra vires act," but, "where the city has received a benefit from even an ultra vires act," the court added, "recovery can be had upon quantum meruit."

The charter provision relied on by the city, so far as pertinent, reads as follows: "All contracts for local improvements, and all other contracts involving expenditures under the direction of the board, shall be let by the mayor, upon recommendation of the board, without any action of the council, except in the passage of the original ordinance authorizing the improvement or contracts. All such contracts shall be let to the lowest reliable and responsible bidder, after public advertisement by the

board for not less than ten days in some newspaper of general circulation, published in the city and county. Any other mode of letting such contracts shall be illegal and void, * * *.''

In a case determined subsequent to the trial under review, we held that the charter provision just quoted applied to services rendered the city by architects, and any contract for such services, to be legal, must have its genesis there. We said, ''bids must be received.'' *Johnson-Olmsted Realty Co. v. Denver,* 89 Colo. 250, 1 P. (2d) 928. The case is recent and in point. We cited there, and commend again, *Colorado Springs v. Coray,* 25 Colo. App. 460, 139 Pac. 1031. Examination shows the case is not subject to the inherent weakness claimed by counsel for the architect. The trial judge's remarks indicate that he apprehended the binding force of the charter provision, and consequent illegality of the contract of the architect's employment; and, as we analyze his summation, had it not been for his further view that notwithstanding such illegality the city was bound, as by implication, to respond for the value of the architect's services, the judgment would have been favorable to the city. It remains to examine that angle of the problem.

The claim that quantum meruit lies is well negatived in *Colorado Springs v. Coray, supra.* There Coray, as to the character of whose services no criticism attended, superintended the construction of a public building which the municipality erected, but his right of recovery was denied because instead of securing the employment through competitive bidding, as the statute required, he acted under the direction of the chairman of the city's committee on public buildings and grounds. The court's conclusion, which we regard as sound, that since the employment was not authorized the value of Coray's services could not be made the basis of recovery, is amply supported by authorities reviewed. Emphasizing the necessity of holding those dealing with municipalities to

have regard for the law governing their employment, and not failing to appreciate the apparent hardship involved, not lacking or overlooked here, the court said: "While in this case to apply the strict letter of the law may work a hardship upon the plaintiff, it is far better that one man should suffer pecuniary loss than that a rule should be adopted destructive of statutory safeguards." "The city itself," said the Pennsylvania court, "much less any of its subordinate officers, or committee, had no power to make an agreement to pay for such work on the rule of a quantum meruit. We may regret that the plaintiff acted unadvisedly, but to assist him in this hard case would lay the axe at the root of the system which imperatively requires all municipal work of this character to be done by the lowest and best bidder." *Addis v. City of Pittsburgh,* 85 Pa. St. 379. In *Town of Durango v. Pennington,* 8 Colo. 257, 7 Pac. 14, the municipality had let a contract for grading a street. The contractor performed as agreed, the work was accepted and a portion of the contract price paid. To an action brought to recover the balance the municipality interposed the defense that the contract had not been let according to the statute. The court found that the statutory requirements had not been observed, and holding the contract was void, said: "We understand the law to be well settled, that when the mode of proceeding in respect to transactions of this nature is prescribed by law, or in the charter of a municipal corporation, such mode must be strictly pursued by the corporation in relation to the awarding and making of contracts, or no liability is thereby incurred. The party dealing with a municipal body is bound to see to it that all mandatory provisions of the law are complied with, and if he neglects such precaution he becomes a mere volunteer, and must suffer the consequences. * * * It follows from the foregoing rules of decision, that if the defendant corporation was limited by law to a specified mode of contracting indebtedness for the making of street improvements, and such mode

was not observed in the awarding and making of the contract in question, nor in its subsequent ratification, that no recovery thereon can be had against the corporation. In such case it matters not that the work may have been well done, and that the defendant may have the full benefit thereof.'' This case is cited with approval in *Sullivan v. City of Leadville,* 11 Colo. 483, 18 Pac. 736, and in *City of Leadville v. Sewer Co.,* 47 Colo. 118, 107 Pac. 801. In the latter case the court said: ''No case in this court, as we understand, goes to the extent of holding that the rule that both parties to an ultra vires contract are in pari delicto, applies to municipal corporations, but the rulings in this jurisdiction have always been to the contrary. * * * If the rule were otherwise then all statutory and constitutional restrictions upon the authority of municipal officials could, under certain conditions, be avoided by the plea of estoppel.''

The case of *Mountjoy v. School District,* 78 Colo. 162, 240 Pac. 464, cited by counsel for the architect, is distinguishable, as indeed is declared in the case itself. Speaking of the Colorado Springs v. Coray case, the court said: ''In that case the law required certain contracts to be let to the lowest bidders, and plaintiff did not obtain his contract in that manner.'' That is the precise situation here. The architect, to have had an enforceable contract, must needs have obtained the employment through successfully bidding in accordance with the charter provision already quoted. As we have seen, this was not done.

██ ''The prevailing rule undoubtedly is that if the powers of a municipality of its agents are subjected by statute or charter 'to restrictions as to the form and method of contracting that are limitations upon the power itself, the corporation cannot be held liable by either an express or an implied contract in defiance of such restrictions.' The theory on which these cases are decided is that if any substantial or practical results are to be achieved by the restrictions upon the powers of

municipal officers or boards to incur liabilities, as contained in the statutes or charter, no recovery on an implied contract can be allowed, notwithstanding there may be apparent injustice in some cases in adhering strictly to statute or charter provisions. 'It is better that an individual should occasionally suffer from the mistakes of public officers or agents, than to adopt a rule which, through improper combination or collusion, might be turned to the detriment and injury of the public.' " 3 McQuillin Municipal Corporation (2d Ed.), p. 851.

The action here does not involve the power and authority of the city to construct the buildings mentioned, which it undoubtedly had, but does involve a contract of employment entered into in violation of express charter provision. To uphold it, directly or indirectly, would make nugatory a provision binding on all concerned. In adjudging otherwise the court erred.

Let the order be that the judgment is reversed, dismissal of the case to be entered.

MR. JUSTICE HOLLAND not participating.

MR. JUSTICE BOUCK dissents.

MR. JUSTICE BUTLER, concurring.

For the reasons stated in my dissenting opinion in *Johnson-Olmsted Realty Co. v. City and County of Denver*, 89 Colo. 250, 1 P. (2d) 928, the decision in the case at bar does not commend itself to me as sound. Nevertheless, the point here involved seems to have been decided in the Johnson-Olmsted case and for that reason, and for that reason alone, I concur in the reversal of the judgment.

MR. JUSTICE BOUCK, dissenting.

With the decision and majority opinion I do not agree. For the reasons well stated in 1931 by Mr. Justice Butler when dissenting in *Johnson-Olmsted Realty Co. v. City*

*and County of Denver,* 89 Colo. 250, 264, 1 P. (2d) 928, 934, I believe that the professional services of an architect as such are not properly subject to the Denver charter provision (Municipal Code, 1927, page 42, charter section 28), requiring the letting of certain contracts upon competitive bids. The majority opinion in the above mentioned case was concurred in without qualification by the justices then constituting the majority, two of whom are no longer members of this court. The opinion contained two apparent grounds of decision. The first ground was that the Allied Architects Association, the claimant there involved, was a corporation and therefore could not legally supply services as an architect; the second, that architects fall within the aforesaid provision for competitive bids. The first ground, clearly preliminary, was in and of itself decisive of that case. The second ground therefore did not necessarily call for determination. Hence, I think, what was said in relation to the second ground partakes of the nature of a dictum. The questions arising in that connection seem properly open for reconsideration. This seems desirable from the standpoint of fairness, not only because of the radical difference between that case and the case at bar, but because the services dealt with in the present case were rendered more than ten years before this court decided the Johnson-Olmsted case. Until long after the services had been so rendered by the defendant in error's husband and in small part paid for, such skilled and technical services as those of an architect were, so far as I am aware, generally regarded as not within the aforesaid charter provision. The doctrine of stare decisis (rather inaccurately referred to as "a blind following of an ancient precedent") may doubtless receive proper application when a decision has long stood unchallenged. Where, however, as in the Johnson-Olmsted case, the decision is less than three years old and was based ostensibly on two grounds, the secondary and unnecessary

ground may well be subjected to a reexamination under the special circumstances above referred to.

The City and County of Denver is using its West Side Court Building, its Tubercular Hospital, and its Cody Memorial on Lookout Mountain. All these were constructed according to the designs of Moorman, the architect, whose work had to precede that of the builders. The widow is here asking this court to uphold an admittedly small judgment awarded in the lower court as a balance due for that work. I think this judgment should be affirmed, not in any sense as a matter of sympathy, but as a matter of simple justice. I therefore dissent.