## No. 14,839.

SWEDLUND *v.* DENVER JOINT STOCK LAND BANK ET AL.

(118 P. [2d] 460)

Decided October 20, 1941.

Messrs. SAUTER & SANDHOUSE, for plaintiff in error.

Mr. CLAY R. APPLE, Mr. DAVID J. MILLER, Mr. J. DONO-VAN STAPP, Mr. GLENN A. LAUGHLIN, for defendants in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS is an action by the Denver Joint Stock Land Bank, appearing in its own behalf and in behalf of all others similarly situated and one Noel, defendants in error here, to obtain a court decree declaring: That the Big Bend Drainage District, one of the defendants, was not properly organized, and that all acts and proceedings of its trustees and officers, as such, particularly in the issuance of certain warrants of the district, are null and void; that title to lands lying within the boundaries of the district be quieted in the owners; that the cloud upon such titles created by warrants issued by such district and by tax sale certificates issued in payment of assessments levied by the district, be removed; and for other appropriate relief. Judgment was in favor of plaintiffs.

The Big Bend district was created March 12, 1930, and shortly thereafter the board of directors thereof fixed and adopted an estimated cost of the work set out

in the plans for the drainage system, including the probable expense of district organization, at the sum of $8,385.75. Pursuant to section 74, chapter 57, '35 C.S.A., advertising for bids was ordered, in response to which two bids were submitted, the lowest being made by Henry Hartz, who offered to do the construction work at the price of ten cents per cubic yard. The second bid was by Edward Selander, who proposed to do the work for 12½ cents per cubic yard, plus a fee for additional work. The Hartz bid was accepted and a contract based thereon entered into October 3, 1930, between him and the district. This contract was signed by landowners within the district "equal in number to the majority of the votes cast in the last district election." Hartz did not complete the contract, and November 10, 1930, the district, by agreement in writing, released him therefrom. There were no further calls for bids, nor do the records of the district disclose any express contract between it and Selander. The records do show that October 12, 1931, the board authorized an expenditure of $10,921.75, to Selander. This expenditure the bank and Noel, among other contentions, assert was illegal and void, as to the landowners within the district, under the provisions of section 24, of said chapter 57, the pertinent language of which, as applicable to this expenditure, is as follows: "No contract or expenditure involving more than ten thousand dollars ($10,000) shall be made or be binding unless the question of making said contract or expenditure shall have been submitted and said expenditure authorized at an election in said district." It is undisputed that the expenditure here questioned was not submitted to, and authorized by, the landowners of the district at any election. The trial court found, inter alia, that this expenditure was in violation of said section 24, and in making the finding it used the following language: "That the outstanding warrants of the defendant The Big Bend Drainage District, are void and do not constitute any indebtedness of said Big Bend

Drainage District," and entered judgment accordingly.

No bonds ever were authorized or issued by the district. It is admitted that the interest of the bank, as mortgagee, antedated the creation of the district and the issuing of the warrants for which the tax levies in question were made. The warrants held by Swedlund are a portion of those issued to Selander; they were negotiated after maturity and registration; and there is here no contention that Swedlund is a holder in good faith without notice.

██ ██ If the trial court was right in finding that the expenditure by the district in payments to Selander in excess of $10,000 was null and void, it is unnecessary, to an affirmance of the judgment, to examine the other grounds upon which the bank and Noel rely. We proceed to an analysis of this problem, and in its solution, and by analogy, we are aided by the construction of similar statutes by this and other courts. For example, section 387, chapter 90, '35 C.S.A. (section 11, chapter 113, Session Laws 1905), relating to the construction and financing of irrigation districts, contains the following: "Nor shall any contract in excess of twenty-five thousand dollars be binding until such contract shall have been authorized and ratified at an election, in manner as is provided for the issue of bonds." This section was construed by us in *Colorado Irrigation Construction Co. v. Nile Irrigation District*, 69 Colo. 366, 194 Pac. 609. In that case the irrigation district entered into a construction contract in 1909 which was properly authorized and ratified at an election; the contract was to have been completed within twenty months from the approval thereof, and a surety company executed a bond for the faithful performance of the contract. Nothing was done under this contract, however, except to make borings and prepare some maps. In 1912 the district board agreed with the construction company and its surety to a material modification of the contract, which changed the number of reservoirs to be built from

eight to three, and the capacity of the reservoirs from 35,000 acre-feet to 25,000 acre-feet. No authorization and ratification by election, as provided by section 387, supra, was had on the modified contract. The three reservoirs were constructed, and the district board accepted the work as complete and paid the contractor the agreed consideration. Thereafter the irrigation district instituted an action against the construction company, and its surety for failure to faithfully perform the 1909 contract, and recovered. The contractor and surety company contended that the district, by the acts of its board, waived the default in the completion of the 1909 contract, and in modifying it the board, in effect, abrogated the old contract. In passing upon the legality of the 1912 modification, we said:

"The gist of the question to be determined is, was the making of the changes in the contract within the power of the district board. Defendants rely upon a provision in the original contract by which it might be modified by the mutual consent of the parties. The trial court found that the modifications made involved an expenditure in excess of $25,000 and hence were within the provisions of Section 11, Chapter 113, Session Laws 1905, which defines the powers and prescribes the duties of the board. * * * *

"The contention of plaintiffs in error is that the provision in the contract for its modification by the consent of both parties authorized the district board to change the contract as it did. They urge, that this modification provision, having been approved by the electors as a part of the contract, the board was authorized as agents of the electors, or as the executive officers of the district, to make the modification. This is an extreme, and as it seems to us, an unreasonable view of the provision in question. The statute above cited was, in effect, read into the original contract, and the modification provision must be construed in connection with this statu-

tory provision. If counsel's view is correct, a district board, having secured the approval of a contract containing such a provision, has thereby exempted itself from this statutory prohibition.

"Clearly, it was not in the power of the district board, nor of the electors themselves, to abrogate this statute, which was intended, not merely for the protection of the electors who might vote, but for the protection of all of the proper [property] owners in the district.

\* \* \* \*

"The lawmakers certainly knew that directors of irrigation districts would be, for the most part, men without experience in large enterprises, subject to the blandishments of promoters and contractors; and so they inserted in the statute these limitations on the power of the board to make binding contracts.

\* \* \* \*

"If the contract under which the work was done, violated the statutes and was therefore void, no action of the board by way of an acceptance of the work can have any force. If such acceptance were conclusive the act of acceptance would abrogate the statute above mentioned."

For a similar ruling, see *Antero & Lost Park Reservoir Co. v. Lowe,* 69 Colo. 409, 433, 194 Pac. 945.

In the present case the warrants held by Swedlund, being based upon an illegal expenditure, are likewise invalid, 44 C.J., p. 1168, §4127. Obviously, this also applies to a tax levy and tax sale by the county treasurer based upon an invalid expenditure by a drainage district under an unauthorized contract.

Counsel for Swedlund say, that the board of directors of the district, after having called for bids on the original proposal—that of Hartz being accepted—thereafter released Hartz from his contract, and proceeded to construct the work under its own supervision, asserting authorization of this course under section 74, chapter 57, supra, the pertinent part of which is as follows: "The

board of directors may enter into a contract with the lowest responsible bidder, for the construction of the whole or any portion of the work mentioned in the notice, or may reject any and all bids and re-advertise for proposals, or may proceed to construct the work under the supervision of the board of directors, and in that event all materials shall be purchased of the lowest responsible bidders after proposals have been invited and notice thereof published as aforesaid."

Assuming, but not deciding, that the board so proceeded, this would not absolve it from submitting a proposed expenditure of more than $10,000 to the owners of land within the district through an election as provided by section 24, chapter 57, supra. Having failed in this, it cannot justify its procedure under the provisions of said section 74; moreover, no bids ever were rejected by the board. What really moved the board to make this expenditure without submitting it to a vote of the landowners of the district is stated in the reply brief of plaintiff in error, as follows: "The members of the board of directors were fully within their rights and were exercising their statutory duty in proceeding with the construction without the necessity for a new advertisement for bids, particularly as only two bids had been submitted in response to the first advertisement, and they were warranted in the assumption that in order to promptly secure the completion of this necessary drainage, that the second low bid of Selander was the best bid available." From the expression of this view it may also be inferred that a contract for the work was entered into between the board and Selander in violation of section 24, supra.

A statute similar to our section 74, requiring bids, was construed by the Supreme Court of Oregon in the case of *Twohy Bros. Co. v. Ochoco Irr. Dist.*, 108 Ore. 1, 210 Pac. 873, 216 Pac. 189. In that case a construction contract was let by the irrigation district without first obtaining bids. The construction company sued

the irrigation district for an unpaid balance of approximately $225,000. The court held that the statute was mandatory; that there must be a compliance with its provisions; and that contractors dealing with the district are charged, at their peril, with knowledge of the powers ·of the board of directors. In view of the large amount of money involved, the case was carefully considered, and a number of authorities from other states, including Colorado, were cited. It was reconsidered by the Oregon court on a petition for rehearing, and there was an adherence to the original opinion. *Twohy Bros. Co. v. Ochoco Irr. Dist., supra.* There is no implied liability on a contract awarded by a municipal corporation in violation of the terms of a statute. *Twohy Bros. Co. v. Ochoco Irr. Dist., supra; Lincoln and Dawson County Irr. Dist. v. McNeal,* 60 Nebr. 613, 83 N.W. 847; *Bonneville Irr. Dist. v. Ririe,* 57 Utah 306, 195 Pac. 204; *Mulnix v. Mutual Benefit Life Ins. Co.,* 23 Colo. 71, 46 Pac. 123, 33 L.R.A. 827; *Colorado Springs v. Coray,* 25 Colo. App. 460, 139 Pac. 1031. The question of the validity of contracts entered into by municipal corporations without first obtaining bids as required by statute or charter was before us in the following cases: *Dalby v. Longmont,* 81 Colo. 271, 256 Pac. 310; *Johnson-Olmsted Realty Co. v. Denver,* 89 Colo. 250, 1 P. (2d) 928; *City and County of Denver v. Moorman,* 95 Colo. 111, 33 P. (2d) 749, and in each of these the contract under consideration was held void, indicating an adherence to the rule requiring strict compliance with the controlling law, in the absence of which a holding of invalidity is imperative.

The earliest case on the question of the invalidity of a contract executed by a municipality without compliance with the provisions of a statute or town charter prescribing the requisite procedure, is *Durango v. Pennington,* 8 Colo. 257, 7 Pac. 14, in which the contract was declared void. Since the pronouncement in that case we have consistently held that contracts executed

by municipal corporations in which there was a failure to comply with the mandatory provisions of the applicable statutes or charters are void. *Sullivan v. Leadville,* 11 Colo. 483, 18 Pac. 736; *Smith Canal Co. v. Denver,* 20 Colo. 84, 36 Pac. 844, 33 L.R.A. 827; *Mulnix v. Mutual Benefit Life Ins. Co., supra; City and County of Denver v. Hindry,* 40 Colo. 42, 90 Pac. 1028, 11 L.R.A. (N.S.) 1028; *Mountjoy v. Cheyenne County High School District,* 78 Colo. 162, 240 Pac. 464.

We conclude that the contract, or expenditure of more than $10,000 which was paid to Selander, was not binding and is null and void, said expenditure not having been submitted to, and authorized by, the landowners at an election in said district as provided by section 24, supra.

The argument of counsel for plaintiff in error is primarily a plea for upholding the legality of the 1936 levy, payable in 1937, which amounted to eighteen per cent of the assessed benefits, and which was by the trial court held to be a cumulative levy. Since this opinion is founded upon the premise that the contract or expenditure upon which the assessment was based is null and void, the equitable principles, which counsel for plaintiff in error contend require a reversal of the judgment, have no applicability.

This suit, commenced in December, 1937, was provoked by an alleged illegal levy in the fall of 1936. Apparently, defendants in error bank and Noel cannot be charged with laches in bringing the suit, and none was pleaded. Plaintiff in error did plead estoppel, but it is doubtful if such a defense, under the circumstances before us, is tenable. "It is essential to the existence of an equitable estoppel that the representation, whether consisting of words, acts, or omissions, of the party against whom the estoppel is asserted shall have been believed by the party claiming the benefit thereof and that he shall have relied thereon and been influenced and misled thereby." 19 Am. Jur., p. 730, §83. The rec-

ord discloses no such facts, and the general finding against Swedlund, plaintiff in error, properly disposes of the defense of estoppel as well as the claim of laches.

Plaintiff in error filed a cross complaint against Harvey E. Witwer, as county treasurer and ex officio treasurer of the district, seeking to recover a judgment against him upon four district warrants in the sum of $1,200, this being a portion of the warrants referred to above. On this cross complaint the court found generally for the county treasurer. In view of our conclusions, this finding was not error.

The judgment is affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK and MR. JUSTICE BURKE not participating.