534 P.2d 805 (1975)
NORMANDY ESTATES METROPOLITAN RECREATION DISTRICT, a Quasi-municipal Corporation of the State of Colorado, Plaintiff-Appellant,
v.
NORMANDY ESTATES LIMITED, a Colorado Corporation, Defendant-Appellee,
and
Helen Bush, as Public Trustee in and for the County of Jefferson, Colorado, Defendant.
No. 74-205.
Colorado Court of Appeals, Div. III.
February 19, 1975.
Rehearing Denied March 11, 1975.
Certiorari Granted May 22, 1975.
Calkins, Kramer, Grimshaw & Harring, P.C., Richard L. Harring, Denver, for plaintiff-appellant.
Haskell & Crandell, Ralph E. Crandell, Denver, for defendant-appellee Normandy Estates Limited.
Selected for Official Publication.
RULAND, Judge.
Plaintiff, Normandy Estates Metropolitan Recreational District (District), appeals from a judgment in the amount of $33,704.14 entered on the counterclaim of defendant, Normandy Estates Limited, a Colorado corporation (Normandy). We affirm.
The material facts in this case are not disputed. In August of 1959 the taxpaying electors of the District approved a bond issue in the amount of $120,000 for the purpose of purchasing or constructing recreational *806 facilities. However, the property valuations within the District were inadequate to support the sale of the bonds. Accordingly, in February of 1960 the District entered into a written agreement with Normandy whereby the District agreed to purchase a swimming pool and other improvements previously installed by Normandy on four acres of land owned by an officer of Normandy. In conjunction with this agreement, the District entered into a lease with the landowner. Sometime thereafter title to the four-acre tract was conveyed by the owner to Normandy.
The purchase agreement provided that the price would consist of Normandy's actual costs for erection of the facilities, including interest and legal fees (but not to exceed $85,000). The District was obligated to pay $12,000 down and the balance from the sale of the bonds as soon as there was a market available without an "unreasonable discount."
Through December of 1961, the District paid $36,400 toward acquisition of the recreational facilities. However, the directors for the District were not satisfied with the posture of the transaction because the District was obligated under the lease to pay general property taxes on the land and improvements, and the taxes were being assessed at the rate of approximately $1,700 per year. Since the tax obligation could be eliminated by transfer of title to the District, Normandy agreed to convey the four-acre tract to the District without charge therefor in consideration for the District's agreement to acquire the recreational facilities for a total purchase price of $88,009.60, which was stipulated as Normandy's actual cost at that time. Therefore, a written agreement was executed by the parties in May of 1962 for this purpose, rescinding the prior purchase agreement and lease. The new agreement recited prior payments by the District of $36,400, leaving a balance due of $51,609.60 on the purchase price. The balance of the purchase price was represented by two promissory notes secured by a deed of trust on the four-acre tract. The first note was for $21,782.92 with interest at seven percent per annum; the second note for $29,826.68 was non-interest bearing unless unpaid on its due date. Both notes were payable within ten years from proceeds derived through sale of the bonds authorized in 1959.
The minutes of a directors' meeting held for the purpose of approving the revised agreement recite:
"The Board of Directors, after a full discussion, expressed an opinion that the execution of this Contract between the District and Normandy . . . proffered an opportunity to the District to acquire actual ownership of facilities far in excess of the District's ability to pay for and to construct at this time, and that the payment provision of the Contract was reasonable, and that the inhabitants of the District, as well as the District, would profit immeasurably by the execution of the Contract and the acquisition of the facilities detailed in said Contract."
At this meeting the directors also determined to construct additional facilities on the four-acre tract.
By December of 1964 the District had sold additional bonds and had received therefrom approximately $30,000. The directors therefore authorized payment to Normandy of the interest bearing note. However, when the non-interest bearing note came due in 1972, the District refused payment on the basis that the indebtedness was void because of its failure to comply with 1960 Perm.Supp., C.R.S. 1953, 89-12-25(1), which was in effect at the time the revised agreement was executed. This statute prohibited the District from incurring indebtedness to acquire recreational facilities in excess of $15,000 without first submitting the issue to the taxpayers for approval at an election.
Normandy therefore initiated foreclosure proceedings on the deed of trust through the public trustee. The District countered by filing the present action to enjoin the *807 foreclosure proceedings, to obtain a determination that the notes and deed of trust were void, and to recover the amount paid to satisfy the first note. In its answer Normandy contended that the indebtedness was valid and, by counterclaim, asserted that even if the notes and deed of trust were void, judgment should be entered in its favor for the balance due on the noninterest bearing note under the doctrine of equitable estoppel or unjust enrichment.
Following a trial to the court, it determined that the note and deed of trust were void because of the District's failure to comply with 1960 Perm.Supp., C.R.S.1953, 89-12-25(1). No appeal has been taken from that determination.
Relying on the doctrine of unjust enrichment set forth in Chapman v. Board of County Commissioners, 107 U.S. 348, 2 S. Ct. 62, 27 L.Ed. 378, the trial court entered judgment on defendant's counterclaim for the balance of the purchase price as represented by the non-interest bearing note. Although this note provided for interest at eight percent per annum if the note was not paid when due, the court assessed interest at six percent pursuant to § 5-12-102, C.R.S.1973 (1971 Perm.Supp., C.R.S. 1963, XX-XX-XXX), based on its determination that the note was void.
The sole issue on this appeal is whether the doctrine of unjust enrichment as set forth in Chapman, is applicable in the situation presented here. Counsel for the respective parties acknowledge that this is an issue of first impression in this jurisdiction.
We recognize that a contract with the District is void if the District fails to comply with statutory requirements governing such a contract, see, e.g., Swedlund v. Denver Joint Stock Land Bank, 108 Colo. 400, 118 P.2d 460. Hence, the District may not be held liable for benefits received under the contract based upon either the doctrine of implied contract. See e.g., Smith Canal or Ditch Co. v. Denver, 20 Colo. 84, 36 P. 844, or estoppel. See, e. g., City of Colorado Springs v. Coray, 25 Colo.App. 460, 139 P. 1031. However, in other jurisdictions which acknowledge these principles, it has long been established that where, as here, a municipality has received specific property under an invalid contract, the contract will not be enforced but an action may be maintained in the nature of rescission to recover that property. See 10 E. McQuillin, Municipal Corporations § 29.111a (rev. 3rd ed. F. Ellard); Annot., 93 A.L.R. 441. The principles supporting such a recovery are aptly stated in Marsh v. Board of Supervisors, 10 Wall. 676, 77 U.S. 676, 19 L.Ed. 1040, as follows:
"The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. But this is a very different thing from enforcing an obligation attempted to be created in one way when a statute declares that it shall only be created in another and different way."
In the case at hand, Normandy sought recovery of the recreational facilities through foreclosure proceedings and the foregoing authorities would support such relief conditioned upon a return by Normandy of all consideration paid by the District as well as the value of any improvements made on the property. However, where, as here, improvements have been added by the District, and the property has substantially increased in value, the District would be penalized by invoking that remedy. This was confirmed by a director for the District who testified that the District had authorized another bond issue to redeem the property in the event the court authorized the foreclosure because "the property was too valuable to the District to let it go." Accordingly, the trial court set aside the foreclosure proceedings and awarded Normandy only the balance due on the purchase contract. This remedy is fully supported by Chapman, supra, under facts very similar to *808 those in the present case. The Court there stated:
"[T]he illegality is not that which arises where the contract is in violation of public policy or of sound morals, and under which the law will give no aid to either party. The plaintiff himself is chargeable with no illegal act, and the corporation is the only one at fault in exceeding its corporate powers by making the express contract. The plaintiff is not seeking to enforce that contract, but only to recover his own money and prevent the defendant from unjustly retaining the benefit of its own illegal act.. . . . . .. . . . . .
"[I]t would be inequitable to decree a rescission of the contract and a restoration of the title to and possession of the property, because the parties cannot be placed in statu quo . . . [T]he circumstances have greatly changed by the increase in the value of the property and the expensive improvements that have been put upon it by the county. . . . Any such injurious and inequitable results as are deprecated may easily be averted by the simple payment of the amount due on account of the purchase money, which the appellants consent to receive, which is within the statutory powers of the county, and for which proper provision may be made in the decree."
The District suggests that since officers of Normandy also served on the District Board from time to time, the equitable principles established in Chapman should not be applied in this case because those officers participated in the ultra vires transactions. This contention is without merit. The trial court specifically found that both parties acted in good faith.
We hold that, under the circumstances of this case, the trial court did not err in applying the rule in Chapman, and, accordingly, the judgment is affirmed.
COYTE, J., concurs.
STERNBERG, J., dissents.
STERNBERG, Judge (dissenting):
I respectfully dissent.
The trial court and the majority correctly found the notes in question to be ultra vires and, therefore, void. However, they do by indirection what they could not do directly and give legal effect to them by requiring payment of the principal amount. It should not be the function of a court to create an exception to a statute and thus, defeat the intent of the legislature. See Chicago Title & Trust Co. v. Patterson, 65 Colo. 534, 178 P. 13; Ray v. City & County of Denver, 109 Colo. 74, 121 P.2d 886. Yet, that is precisely the result reached by the majority opinion.
In enunciating an exception to this heretofore consistent line of authority, both the trial court and the majority rely on the equitable considerations utilized in the 1883 case of Chapman v. Board of County Commissioners, 107 U.S. 348, 2 S.Ct. 62, 27 L. Ed. 378. However, as stated in City of Colorado Springs v. Coray, 25 Colo.App. 460, 139 P. 1031 (1913), such equitable doctrines cannot properly be employed in cases such as the present one, because the controlling statute "was not made for the benefit of the city council, nor of contractors, but for the protection of the public against both."
There are many Colorado cases in which those dealing with municipal and quasi-municipal corporations have been denied recovery on ultra vires contracts. See, e.g., City of Englewood v. Ripple & Howe, Inc., 150 Colo. 434, 374 P.2d 360; and Shannon Water & Sanitation District v. Norris & Sons Drilling Co., 29 Colo.App. 48, 477 P. 2d 476. In Shannon, the purposes for strictly applying a statute similar to the one in this case were stated to be:
"[T]o protect the taxpayer against improvident use of tax revenue, to encourage citizen participation and debate prior to the institution of public projects, to *809 insure public disclosure of proposed spending, and to encourage prudence and thrift by those elected to direct expenditure of public funds."
For these reasons, I would reverse that portion of the judgment which permits recovery of the amount thereof on the theory of unjust enrichment.